## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| KEY WEST POLICE & FIRE PENSION FUND, on behalf of itself and all others similarly situated,<br><br>              Plaintiff,<br><br>      v.<br><br>RYDER SYSTEM, INC., ROBERT E. SANCHEZ, ART A. GARCIA, and SCOTT T. PARKER,<br><br>              Defendants. | Civil Action No.<br><br><u>CLASS ACTION</u><br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Key West Police & Fire Pension Fund ("Key West P&F" or "Plaintiff"), by and through its counsel, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief are based upon, *inter alia*, counsel's investigation, which included review and analysis of: (a) regulatory filings made by Ryder System, Inc. ("Ryder" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (b) press releases, presentations, and media reports issued and disseminated by the Company; (c) analyst and media reports concerning Ryder; (d) transcripts of Ryder's investor conference calls; and (e) other public information regarding the Company.

### INTRODUCTION

1.      Plaintiff brings this securities class action on behalf of all persons or entities that purchased shares of Ryder common stock between July 23, 2015 and February 13, 2020, inclusive (the "Class Period"). The claims asserted herein are alleged against Ryder and certain of the Company's current and former senior executives (collectively, "Defendants"), and arise under

Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, promulgated thereunder.

2.      Headquartered in Miami, Florida, Ryder is a global provider of transportation and supply chain management solutions. The Company operates through three segments: Fleet Management Solutions (FMS); Dedicated Transportation Solutions (DTS); and Supply Chain Solutions (SCS). The FMS segment, which provides full service leasing and leasing with flexible maintenance options, commercial rental, and contract or transactional maintenance services of trucks, tractors and trailers, is a key driver of Ryder's business and accounts for approximately 60 percent of the Company's revenue. As part of Ryder's truck-leasing model, Ryder assigns residual values to its trucks for depreciation purposes and then sells those vehicles at the end of their useful lives.

3.      For each year between 2011 and 2016, Ryder adjusted the residual values of certain assets upwards between $10 million and $40 million. Increasing an asset's residual value enables a company to decrease the incremental depreciation charge it records on that asset each year. This is because depreciation is calculated as the present value of the asset, less the residual value, divided by the number of years in the asset's useful life. Thus, the higher a company reports its assets' residual value, the less depreciation the company must record per year, which has the effect of increasing earnings on a dollar-for-dollar basis. In total, Ryder's upward adjustments resulted in a cumulative benefit of $158 million, or $1.92 per share, over this six-year span.

4.      Throughout the Class Period, Defendants misrepresented Ryder's true financial condition by overstating the residual value of its trucking fleet, which allowed the Company to record smaller depreciation expense on those assets each year, and artificially inflated Ryder's earnings. Defendants represented to investors that its financial results "benefited from lower

depreciation associated with increased residual values" and that the Company had been "conservative" in establishing the residual values of its vehicles. While Ryder kept increasing the expected residual value of its trucking fleet, the actual amount Ryder was receiving from sales of its used trucks had started to decrease beginning in 2015. Nevertheless, when asked about the residual values of the Company's trucks during Ryder's July 27, 2016 earnings call, Chairman and Chief Executive Officer, Defendant Robert Sanchez stated that "I wouldn't envision an increase or decrease in residual values out over the next four, five years." These and similar statements during the Class Period were false and misleading because Defendants knew or recklessly disregarded that the residual values that Ryder assigned to its trucking fleet were grossly overstated, which had the effect of allowing the Company to record smaller depreciation expenses and artificially inflated Ryder's earnings. As a result of these misrepresentations, shares of Ryder common stock traded at artificially inflated prices during the Class Period.

5.     The truth began to emerge on July 30, 2019, when the Company drastically reduced its full-year 2019 earnings forecast and management indicated that the majority of the lowered guidance reflected Ryder's weaker valuations of its tractors. In response to these disclosures, Ryder's stock price declined 10%, from $59.32 per share to $53.38 per share.

6.     On October 29, 2019, the Company revealed that "management concluded that our residual value estimates likely exceeded the expected future values that would be realized upon the sale of power vehicles in our fleet." As a result, the Company significantly lowered the residual values for all its vehicles and incurred $177 million in additional depreciation expense in the third quarter of 2019. In response to these disclosures, Ryder's stock price declined more than 12% over two trading days, from $55.12 per share to $48.44 per share.

7.     Then, on February 13, 2020, the Company reported that, as a result of the

significant reductions to the residual value of its fleet, it had incurred a total of $357 million in depreciation expense for 2019 plus a loss of approximately $58 million on the sale of used vehicles. The Company also announced that, for 2020, it expected to incur another $275 million in depreciation expense on its fleet due to the reductions in residual value plus an additional $20 million estimated loss on used vehicle sales. In response to these disclosures, Ryder's stock price declined 20% over two trading days, from $50.19 per share to $40.12 per share.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5). This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.      Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). Ryder maintains its headquarters in Miami, Florida, which is situated in this District, conducts substantial business in this District, and many of the acts and conduct that constitute the violations of law complained of herein, including dissemination to the public of materially false and misleading information, occurred in and/or were issued from this District. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

### A.      Plaintiff

10.      Plaintiff Key West P&F is a public pension fund for the benefit of active and retired police officers and firefighters of the City of Key West, Florida. As indicated on the certification

submitted herewith, Key West P&F purchased Ryder common stock at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

### B. Defendants

11.     Defendant Ryder is incorporated in Florida, and maintains its corporate headquarters at 11690 N.W. 105th Street, Miami, Florida.  The Company's common stock trades on the New York Stock Exchange ("NYSE") under ticker symbol "R."  As of January 31, 2020, Ryder had over 53 million shares of common stock outstanding, owned by hundreds or thousands of investors.

12.     Defendant Robert E. Sanchez ("Sanchez") has served as Ryder's Chief Executive Officer ("CEO") since January 2013 and as Chairman of Ryder's Board since May 2013.

13.     Defendant Art A. Garcia ("Garcia") served as Executive Vice President and Chief Financial Officer ("CFO") of Ryder from September 2010 until April 5, 2019, and then served as a Special Advisor to the CEO until April 30, 2019.

14.     Defendant Scott T. Parker ("Parker") has served as Executive Vice President and CFO of Ryder since April 5, 2019.

15.     Defendants Sanchez, Garcia, and Parker are collectively referred to hereinafter as the "Individual Defendants."  The Individual Defendants, because of their positions with Ryder, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors.  Each of the Individual Defendants was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to

them, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.

## BACKGROUND

16.     Ryder is a global provider of transportation and supply chain management products, including leasing trucks to end users.  The Company operates through three segments: Fleet Management Solutions (FMS); Dedicated Transportation Solutions (DTS); and Supply Chain Solutions (SCS).

17.     Through Ryder's FMS segment, the Company provides full service leasing and leasing with flexible maintenance options, commercial rental, and contract or transactional maintenance services of trucks, tractors and trailers.  The FMS segment accounts for approximately 60 percent of the Company's revenue.

18.     As part of Ryder's truck-leasing model, Ryder assigns residual values to its trucks for depreciation purposes.  Ryder then sells its used vehicles at the end of their useful lives.  The Company calculates its depreciation expense by subtracting the residual value from the present value of its trucks and dividing that number by the number of years in the trucks' useful lives.  An increase in the residual value of the Company's trucks enables it to decrease the incremental depreciation expense recorded on those assets.  Thus, the higher the residual value that Ryder assigns to its fleet, the less depreciation expense the Company must record, which has the effect of increasing Ryder's earnings on a dollar-for-dollar basis.

### DEFENDANTS' MATERIALLY FALSE AND MISLEADING
### STATEMENTS CAUSE SUBSTANTIAL LOSSES TO INVESTORS

19. The Class Period begins on July 23, 2015, when the Company issued a press release announcing its financial and operating results for the quarter ended June 30, 2015. The press release, which Ryder also filed with the SEC on Form 8-K, reported that earnings before tax in the FMS business segment were $122.8 million in the second quarter, up 8% compared with $113.5 million in the same period of 2014. The press release stated that the Company's full service lease results benefited from "lower depreciation associated with increased residual values."

20. That same day, Ryder held its second quarter 2015 earnings call. On that call, Defendant Sanchez assured investors that the headwind the Company faced in its FMS business from used vehicle sales versus the prior year "is being offset on the earnings line by the improvements that we've seen in depreciation expense also."

21. On August 7, 2015, Ryder filed its quarterly report with the SEC on Form 10-Q, reporting the Company's financial and operating results for the quarter ended June 30, 2015. Ryder reported that the Company's lease and rental gross margin within its FMS business segment increased 10% in the second quarter of 2015 to $247.7 million and attributed the increase in margin, in part, to "benefits from improved residual values." The Company also reported that earnings before tax in its FMS business segment increased 8% in the second quarter of 2015 to $122.5 million and stated that "[r]esults benefited from $10.0 million of lower depreciation in the second quarter of 2015" due, in part, to "residual value policy changes."

22. On September 10, 2015, Defendant Garcia presented at the RBC Capital Markets Global Industrials Conference. During the conference, Defendant Garcia stated that "we've been benefiting from the solid used truck environment because of an increase in residuals, which helped bring down depreciation expense, which more than offset any gains headwind that we saw."

Defendant Garcia also stated that "we probably haven't raised our residuals fast enough" and "we've been kind of conservative in that."

23.     On October 22, 2015, the Company issued a press release announcing its financial and operating results for the quarter ended September 30, 2015.  The press release, which Ryder also filed with the SEC on Form 8-K, reported that earnings before tax in the FMS business segment were $126.4 million in the third quarter of 2015, up 5% compared with $120.9 million in the same period of 2014.  The press release stated that, despite "less robust used vehicle sales conditions," the Company's full service lease results benefited from "lower depreciation associated with increased residual values."

24.     That same day, Ryder held its third quarter 2015 earnings call.  On that call, Defendant Sanchez stated "[a]s we look ahead into 2016, we're likely to see lower gains on sale due to pricing" but assured investors that the Company would realize a "benefit in depreciation due to higher residual values using our five-year rolling average methodology."

25.     Ryder also filed its quarterly report with the SEC on Form 10-Q, reporting the Company's financial and operating results for the quarter ended September 30, 2015.  Ryder reported that the Company's lease and rental gross margin within its FMS business segment increased 8% in the third quarter of 2015 to $252.3 million and attributed the increase in margin, in part, to "benefits from improved residual values."  The Company also reported that earnings before tax in its FMS business segment increased 5% in the third quarter of 2015 to $126.4 million and stated that results benefited from $10.0 million of lower depreciation due to "residual value policy changes."

26.     On November 10, 2015, Defendant Sanchez presented at the Robert W. Baird & Co. Industrials Conference.  During the conference, Defendant Sanchez explained that the

Company determines the residual value of its trucks based on a rolling five-year average of what Ryder has been selling used trucks for and "as used truck pricing has really gone up we've been lagging in that just because you don't want to overshoot the residual values."  Defendant Sanchez then assured investors that "even in this environment I would expect that a five-year rolling average is going to cause an increase in residual values which is a benefit to depreciation expense" and "[s]o you kind of view used truck gains headwinds primarily offset by depreciation policy benefit."

27.     On November 11, 2015, Defendant Garcia presented at the Stephens Fall Investment Conference.  During the conference, Defendant Garcia stated that, for 2016, "we still would expect there to be a positive from residual values despite a declining environment [for used truck prices] here in the last few months."  Defendant Garcia also represented that even though used truck prices were declining, "we're still saying there's still an opportunity to raise residuals in light of that."

28.     On February 2, 2016, the Company issued a press release announcing its financial and operating results for the fourth quarter and full year ended December 31, 2015.  The press release, which Ryder also filed with the SEC on Form 8-K, reported that earnings before tax in the FMS business segment were $123.5 million in the fourth quarter of 2015, up 1% compared with $122.3 million in the same period of 2014.  The press release stated that the Company's full service lease results benefited from "lower depreciation associated with increased residual values."

29.     That same day, Ryder held its fourth quarter 2015 earnings call.  On that call, Defendant Sanchez stated that "[s]ignificant increases in used vehicle pricing over the past five years will benefit depreciation rates in 2016, as these results are blended into our vehicle residual calculation" and "[t]hese benefits will partially offset lower expected gains on used vehicles sold."

After describing the headwinds from used vehicle sales and the decline in used vehicle pricing, Defendant Sanchez assured investors that "I feel really good about our ability to respond quickly to them."  In response to an analyst's question about the depreciation benefit going forward, Defendant Sanchez stated that "[i]f we had a type of bleak environment, as we've painted here … you would be in a situation probably 2017 where things would be flat" and "[s]o there wouldn't be depreciation policy movement one way or the other."

30.     On February 11, 2016, Defendant Sanchez presented at the BB&T Transportation Services Conference.  During the conference, Defendant Sanchez assured investors that "[w]e don't have a situation where we've got a bunch of vehicles that are at high residual values [and] have to be written down."

31.     On February 12, 2016, Ryder filed its annual report with the SEC on Form 10-K, reporting the Company's financial and operating results for the year ended December 31, 2015. In the 2015 10-K, Ryder reported that the Company's lease and rental gross margin within its FMS business segment increased 7% in 2015 to $968 million and attributed the increase in margin, in part, to "benefits from improved vehicle residual values."  The Company also reported that earnings before tax in its FMS business segment increased 1% in the fourth quarter of 2015 to $124 million and 7% in 2015 to $462 million and stated that full service lease results benefited from "lower depreciation associated with increased residual values."  The 10-K also stated that depreciation expense increased 8% in 2015, "partially offset by $40 million . . . from changes in residual values."

32.     On April 26, 2016, the Company issued a press release announcing its financial and operating results for the quarter ended March 31, 2016.  The press release, which Ryder also filed with the SEC on Form 8-K, reported that earnings before tax in the FMS business segment were

$82.9 million in the first quarter of 2016, down 8% compared with $89.7 million in the same period of 2015, driven, in part, by lower results in used vehicle sales. However, the press release stated that the Company's full service lease results benefited from "lower depreciation associated with increased residual values."

33.     That same day, Ryder filed its quarterly report with the SEC on Form 10-Q, reporting the Company's financial and operating results for the quarter ended March 31, 2016. Ryder reported that the Company's lease and rental gross margin within its FMS business segment increased 2% in the first quarter of 2016 to $215.3 million and attributed the increase in margin, in part, to "benefits from improved residual values." The Company also reported that earnings before tax in its FMS business segment decreased 8% in the first quarter of 2016 to $82.9 million and stated that "[f]ull service lease and commercial rental results benefited from approximately $9 million of lower depreciation in the first quarter of 2016 due to residual value changes implemented January 1, 2016."

34.     On May 19, 2016, Ryder held a conference with analysts and investors as part of its 2016 Investor Day. In response to an analyst's question whether Ryder expected the residual value to be flat over the next few years, Defendant Garcia stated "[y]es."

35.     On July 27, 2016, the Company issued a press release announcing its financial and operating results for the quarter ended June 30, 2016. The press release, which Ryder also filed with the SEC on Form 8-K, reported that earnings before tax in the FMS business segment were $111.2 million in the second quarter of 2016, down 9% compared with $122.5 million in the same period of 2015, driven, in part, by lower results in used vehicle sales. However, the press release stated that the Company's full service lease and commercial rental results "benefited from lower depreciation associated with increased residual values."

36.     That same day, Ryder held its second quarter 2016 earnings call.  On that call, Defendant Sanchez stated that based on "what we're seeing in the current marketplace, . . . I wouldn't envision an increase or decrease in residual values out over the next four, five years."

37.     Ryder also filed its quarterly report with the SEC on Form 10-Q, reporting the Company's financial and operating results for the quarter ended June 30, 2016.  Ryder reported that earnings before tax in its FMS business segment decreased 9% in the second quarter of 2016 and stated that "[f]ull service lease and commercial rental results benefited from approximately $9 million of lower depreciation in the second quarter and $17 million in the first half of 2016 due to residual value changes implemented January 1, 2016."

38.     On October 25, 2016, the Company issued a press release announcing its financial and operating results for the quarter ended September 30, 2016.  The press release, which Ryder also filed with the SEC on Form 8-K, reported that earnings before tax in the FMS business segment were $112.3 million in the third quarter of 2016, down 11% compared with $126.4 million in the same period of 2015, driven, in part, by lower results in used vehicle sales.  However, the press release stated that the Company's full service lease and commercial rental results "benefited from lower depreciation associated with increased residual values."

39.     Ryder also filed its quarterly report with the SEC on Form 10-Q, reporting the Company's financial and operating results for the quarter ended September 30, 2016.  Ryder reported that earnings before tax in its FMS business segment decreased 11% in the third quarter of 2016 driven, in part, by lower results in used vehicle sales but stated that "[f]ull service lease and commercial rental results benefited from approximately $9 million of lower depreciation in the third quarter and $26 million in the nine months ended September 30, 2016, due to residual value changes implemented January 1, 2016."

40.     On November 8, 2016, Defendant Garcia presented at the Stephens Fall Investor Conference.  During the conference, Defendant Garcia stated that the decline in used truck prices that the Company has experienced "will not result in us changing residuals right now."

41.     On February 14, 2017, Ryder filed its annual report with the SEC on Form 10-K, reporting the Company's financial and operating results for the year ended December 31, 2016. In the 2016 10-K, Ryder reported that depreciation expense increased 6% in 2016 and increased 7% in 2015 and stated that "[t]he increases in both years were partially offset by $35 million and $40 million, respectively, from increases in residual values."  The Company also stated that "[f]ull service lease and commercial rental results benefited from lower depreciation of $35 million due to residual value changes implemented January 1, 2016."

42.     That same day, Defendant Garcia presented at the Stifel Transportation & Logistics Conference.  During the conference, in response to an analyst's question about whether the Company is revisiting its residual values, Defendant Garcia stated that "most likely, it's going to go down a little bit."

43.     On February 16, 2018, Ryder held its fourth quarter 2017 earnings call.  On that call, in response to an analyst's questions regarding a change in residuals and additional depreciation and the potential impact during 2019, Defendant Garcia stated that, based on Ryder's expectations for used truck pricing, it will be at "a lower level than what we had seen this year" and "a reduced headwind of that probably at worst for us."

44.     On April 24, 2018, Ryder held its first quarter 2018 earnings call.  On that call, in response to an analyst's question about what the Company's residual value adjustment would be for 2019, Defendant Garcia stated that "[i]t could be a little bit less than what it was this year" and guided analysts to "model[] in that $30 million to $40 million range."  Defendant Sanchez also

assured investors that "the earnings in the rest of the business is going to more than offset the earnings headwind from used vehicle sales and depreciation."

45.      On May 22, 2018, Defendant Sanchez presented at the Wolfe Research Global Transportation Conference.  During the conference, Defendant Sanchez stated that "we're going to enter 2019 with a lot of tailwind on lease growth, on dedicated growth and on logistics growth" and "the earnings from that should more than offset any headwind we would have from depreciation and used trucks."

46.      On July 25, 2018, Ryder held its second quarter 2018 earnings call.  On that call, Defendant Garcia stated that "we would look at the impact of policy and accelerated [depreciation for 2019] to be in that $40 million to $45 million range.  So a little bit higher than what it is this year."  Defendant Sanchez stated that "I would expect us even with continued headwinds next year, if we continue to have headwinds on the used truck side, to still be able to generate some nice earnings growth . . . driven by the contractual parts of the business."

47.      On October 26, 2018, Ryder held its third quarter 2018 earnings call.  On that call, Defendant Sanchez assured investors that, with respect to the Company's accounting treatment of its residual values, Ryder "keep[s] the residuals in the middle of the fairway as best we can."

48.      On February 14, 2019, Ryder held its fourth quarter 2018 earnings call.  On that call, Defendant Sanchez stated that the Company has seen an improvement in the parity between the market price and residual value of Ryder's used trucks as "the impact of all the accelerated [depreciation] and depreciation policy changes we're making starts to bring that number down" and "[s]o I feel really good about where we're headed with that."  Defendant Sanchez also stated that "going forward, I see the growth continuing and the headwinds really beginning to subside" and "that really helps us feel really good about where we're going to be facing in the next couple

of years."  He further stated that the Company expected a $0.38 headwind to earnings per share due to accelerated depreciation, changes to residual values, and used vehicle sales in 2019 and thus "the headwinds that we're looking at for this year [ ] are a lot less than last year."

49.     On April 30, 2019, Ryder held its first quarter 2019 earnings call.  On that call, in response to an analyst's questions regarding whether the Company was on track to see the approximately $0.40 headwind to earnings per share from losses on used vehicle sales and lower residuals for 2019 and 2020, Defendant Sanchez stated that "I would say we're probably on track for those numbers."

50.     On May 9, 2019, Ryder filed its quarterly report with the SEC on Form 10-Q, reporting the Company's financial and operating results for the quarter ended March 31, 2019. Ryder reported that earnings before tax in its FMS business segment increased 12% in the first quarter of 2019 driven by higher lease and commercial rental growth, and stated that the benefits attributing to lease and rental performance were "offset by higher depreciation of $9 million due to vehicle residual value changes implemented January 1, 2019."

51.     The statements set forth above in ¶¶ 19-50 were materially false and misleading, and they failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not false and misleading.  Specifically, Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements to the investing public that failed to disclose that the Company's financial results were inflated as a result of the Company's practice of overstating the residual values of the vehicles in its fleet because there was no reasonable basis to believe that the Company would sell its used vehicles for the amounts that it had assigned to them.  In truth, the Company's residual values for its fleet of vehicles exceeded the expected future values that would be realized upon the sale of those vehicles

by such a degree that the Company ultimately took a $357 million depreciation charge in 2019 related to Ryder's reduction of its residual values to align them with the amounts for which they could realistically be sold.

### THE TRUTH EMERGES

52.     On July 30, 2019, the Company reported earnings before tax for the second quarter of 2019 in its FMS business segment of $57.7 million compared to $76.6 million the prior year period, driven by lower used vehicle sales results which had declined from the prior year as a result of higher valuation adjustments of $10.4 million on a larger inventory and higher depreciation of $7.6 million due to residual value changes.  As a result, Ryder reduced its earnings per share forecast for 2019 to a range of $4.80 to $5.10, as compared to its prior forecasted range of $5.28 to $5.58.  Although the Company did not quantify the impact of used vehicle prices on its 2019 outlook, management indicated that the majority of the lowered guidance reflected weaker tractor valuations.  In response to these disclosures, Ryder's stock price declined 10%, from $59.32 per share to $53.38 per share.

53.     On October 29, 2019, the Company disclosed to investors that "management concluded that our residual value estimates likely exceeded the expected future values that would be realized upon the sale of power vehicles in our fleet."  As a result, Ryder significantly lowered the residual value estimates for all vehicles and incurred $177 million in additional depreciation expense in the third quarter of 2019.  In response to these disclosures, Ryder's stock price declined more than 12% over two trading days, from $55.12 per share to $48.44 per share.

54.     Then, on February 13, 2020, during the trading day, Ryder reported that, based on the significant reductions to the residual value of its fleet, it had incurred a total of $357 million in additional depreciation expense for 2019 plus a loss of approximately $58 million on the sale of used vehicles.  The Company also announced that, for 2020, it expected to incur another $275

16

million in depreciation charges on its trucking fleet plus an additional $20 million estimated loss on used vehicle sales.  In response to these disclosures, Ryder's stock price declined 20% over two trading days, from $50.19 per share to $40.12 per share.

55.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class members have suffered significant losses and damages.

## LOSS CAUSATION

56.     During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market.  This artificially inflated the price of Ryder common stock and operated as a fraud or deceit on the Class (as defined below).  Later, when Defendants' prior misrepresentations and fraudulent conduct were disclosed to the market, the price of Ryder stock fell precipitously as the prior artificial inflation came out of the price over time.  As a result of their purchases of Ryder stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## CLASS ACTION ALLEGATIONS

57.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired the publicly traded common stock of Ryder during the Class Period (the "Class").  Excluded from the Class are Defendants and their families, directors, and officers of Ryder and their families and affiliates.

58.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  As of January 31, 2020, Ryder had over 53 million shares of common stock outstanding, owned by hundreds or thousands of investors.

59. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a) Whether Defendants violated the Exchange Act;

(b) Whether Defendants omitted and/or misrepresented material facts;

(c) Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d) Whether the Individual Defendants are personally liable for the alleged misrepresentations and omissions described herein;

(e) Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

(f) Whether Defendants' conduct impacted the price of Ryder common stock;

(g) Whether Defendants' conduct caused the members of the Class to sustain damages; and

(h) The extent of damage sustained by Class members and the appropriate measure of damages.

60. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

61. Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

62. A class action is superior to other available methods for the fair and efficient

adjudication of this controversy.  Joinder of all Class members is impracticable.

## INAPPLICABILITY OF STATUTORY SAFE HARBOR

63.     Ryder's "Safe Harbor" warnings accompanying its forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

64.     Defendants are also liable for any false or misleading forward-looking statements pleaded herein because, at the time each such statement was made, the speaker knew the statement was false or misleading and the statement was authorized and/or approved by an executive officer of Ryder who knew that the statement was false.  None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to, or stated to be dependent on, those historic or present tense statements when made.

## PRESUMPTION OF RELIANCE

65.     At all relevant times, the market for Ryder common stock was an efficient market for the following reasons, among others:

(a)     Ryder common stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, Ryder filed periodic public reports with the SEC and the NYSE;

(c)     Ryder regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     Ryder was followed by several securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firm(s).  Each of these reports was publicly available and entered the public marketplace.

66.     As a result of the foregoing, the market for Ryder common stock promptly digested current information regarding Ryder from all publicly available sources and reflected such information in the price of Ryder common stock.  Under these circumstances, all purchasers of Ryder common stock during the Class Period suffered similar injury through their purchase of Ryder common stock at artificially inflated prices and the presumption of reliance applies.

67.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class' claims are grounded on Defendants' material omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding Ryder's business and operations—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance residual values have on the accounting for depreciation expense and the impact a change in residual values has on the Company's earnings, that requirement is satisfied here.

## CAUSES OF ACTION

### COUNT I

**For Violations of Section 10(b) of the Exchange Act and Rule 10b-5
Against All Defendants**

68.     Plaintiff repeats and realleges each and every allegation contained above as if fully

set forth herein.

69.     During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Ryder common stock at artificially inflated prices.

70.     Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Ryder common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

71.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial well-being, operations, and prospects.

72.     During the Class Period, Defendants made the false statements specified above, which they knew or recklessly disregarded to be false and misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

73.     Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them. Defendants engaged in this misconduct to conceal Ryder's true condition from the investing public and to support the artificially inflated prices of the Company's common stock.

74.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Ryder common stock.  Plaintiff and the Class would not have purchased the Company's common stock at the prices they paid, or at all, had they been aware that the market prices for Ryder common stock had been artificially inflated by Defendants' fraudulent course of conduct.

75.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of the Company's common stock during the Class Period.

76.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

## COUNT II

### For Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

77.     Plaintiff repeats, incorporates, and realleges each and every allegation set forth above as if fully set forth herein.

78.     The Individual Defendants acted as controlling persons of Ryder within the meaning of Section 20(a) of the Exchange Act.  By virtue of their high-level positions, participation in and/or awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and/or intimate knowledge of the Company's actual performance, and their power to control public statements about Ryder, the Individual Defendants had the power and ability to control the actions of Ryder and its employees.  By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

### PRAYER FOR RELIEF

79.     WHEREFORE, Plaintiff prays for judgment as follows:

A.     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.     Awarding compensatory damages in favor of Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

D.     Awarding such equitable/injunctive or other further relief as the Court may deem just and proper.

## JURY DEMAND

80.     Plaintiff demands a trial by jury.

DATED: May 20, 2020                          Respectfully submitted,

**KLAUSNER KAUFMAN JENSEN**
**& LEVINSON**

*/s/ Robert* D. Klausner
Robert D. Klausner
Florida Bar Number 244082
Stuart A. Kaufman
Florida Bar Number 979211
7080 NW 4th Street
Plantation, FL 33317
Tel:     (954) 916-1202
Fax:     (954) 916-1232
bob@robertdklausner.com
stu@robertdklausner.com

*Liaison Counsel for Plaintiff Key West Police &*
*Fire Pension Fund*

**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**

Hannah Ross, *pro hac vice* forthcoming
Avi Josefson, *pro hac vice* forthcoming

Michael D. Blatchley, *pro hac vice* forthcoming
1251 Avenue of the Americas
New York, NY 10020
Tel:      (212) 554-1400
Fax:      (212) 554-1444
hannah@blbglaw.com
avi@blbglaw.com
michaelb@blbglaw.com

*Counsel for Plaintiff Key West Police & Fire
Pension Fund*